UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:14-CV-166-H

CHURCHILL DOWNS, INC.                                                              PLAINTIFF

V.

NLR ENTERTAINMENT, LLC, *et al.*                                          DEFENDANTS

**MEMORANDUM OPINION**

Plaintiff Churchill Downs, Inc. ("CDI") brought this action in Jefferson Circuit Court alleging breach of contract and fraud against Defendants NLR Entertainment, LLC ("NLR") and Nicholas L. Ribis, NLR's sole member. It arises from an agreement between CDI and NLR under which CDI would become the exclusive vendor of an internet gaming and online gambling system for an NLR-owned casino.

Defendants removed the case to federal court based on diversity jurisdiction. Now, Defendants move to dismiss the Complaint for lack of personal jurisdiction or, in the alternative, to transfer venue to the United States District Court for the District of New Jersey. After reviewing this matter quite carefully, the question of this Court's personal jurisdiction over Defendants does not appear to be a close call. For the reasons discussed below, the Court finds it does not have personal jurisdiction over Defendants and transfers this case to the District of New Jersey.

I.

The Court will summarize the facts as CDI presents them. CDI is a Delaware corporation with its main office in Kentucky. NLR is a Delaware limited liability company, with its

principal place of business in New Jersey.[1]  Ribis[2] is a New Jersey resident and principal of NLR.

In July 2013, Jeff Berman, an agent of NLR, contacted Ted Gay, the President of Churchill Downs Interactive Gaming LLC,[3] to discuss the possibility of CDI working with NLR on an online gaming system.  Berman informed Gay that NLR planned to purchase the Showboat Atlantic City Hotel and Casino in Atlantic City, New Jersey (the "Showboat") from Caesars Entertainment Corporation and was looking for a service provider to develop and operate online gaming services on the Showboat's behalf.  CDI had been investigating the prospects for developing an internet gaming and online gambling system.  It accepted Berman's offer to introduce it to NLR.

CDI and NLR began discussing the terms of their potential relationship.  CDI's President, William Castanjen, primarily discussed "high level" issues with Defendant Ribis by telephone from Kentucky.  Ted Gay and Ben Murr, Senior Vice President and Chief Technology Officer for CDI, respectively, discussed technical issues via telephone from Kentucky with Nicholas Ribis, Jr., who was working on behalf of NLR.

On August 4, 2013, CDI and Ribis, on behalf of NLR, signed a binding term sheet, under which CDI paid $2,500,000 as earnest money.  On September 4, 2013, Ribis, on behalf of NLR's wholly owned subsidiary NLR Acquisitions, Inc., entered into a License and Operating Agreement (the "Agreement") with Churchill Downs Interactive Gaming.  Alan Tse, CDI's General Counsel, led the negotiations of the terms of the Agreement from Kentucky, and out-of-

---

[1] An LLC's citizenship, for the purpose of evaluating diversity, is the citizenship of each of its partners or members. *See Delay v. Rosenthal Collins Group, LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009). Here, the sole member of NLR is Defendant Ribis, a New Jersey resident.  Therefore, the parties are diverse.
[2] Unless otherwise indicated, "Ribis" refers to Nicholas Ribis, Sr.
[3] Churchill Downs Interactive Gaming LLC is a wholly-owned affiliate of CDI.

state counsel assisted. Ribis executed the Agreement in New Jersey, and Gay executed the Agreement on CDI's behalf while in California.

Under the Agreement, NLR promised to execute a definitive agreement to purchase the Showboat by October 15, 2013 and to consummate the transaction by January 31, 2014. In the event NLR failed to do so, CDI would be entitled to recover its $2,500,000 earnest money. In addition, CDI would be the exclusive vendor of the online gaming system used by the Showboat. In return, CDI promised to host, manage, operate, and support that system on behalf of NLR for seven years, beginning at a target launch date of April 2, 2014. Thereafter, absent notice from either party, the contract would automatically renew for successive 1-year terms. The Agreement contained provisions on intellectual property, customer information, and revenue sharing. Although it did not contain a forum selection clause, the Agreement specified that New Jersey law would govern.

CDI and NLR agreed to additional terms not set forth in the Agreement. First, the online gaming operation would be based in Louisville, Kentucky, where product and software development, engineering, product management, operations, user interface and graphic design, and marketing activities were to take place. To support the Showboat's online gaming, CDI planned to develop new infrastructure in Kentucky, as well as use some existing infrastructure and a small amount of new infrastructure in New Jersey, as required by New Jersey law.

Shortly after the Agreement was executed, and based upon Ribis's continued assurances that NLR was close to closing the Showboat deal, CDI hired 30 new employees, including 20 engineers, to work on the online gaming operation in Kentucky and purchased and licensed $10 million in equipment and software, which it installed at its Louisville, Kentucky facility. NLR

ultimately failed to purchase the Showboat by the Agreement's deadline and has refused to return CDI's earnest money.

## II.

Before discussing the substance of Defendants' motion, the Court must address a threshold issue: whether certain portions of the affidavit of CDI President William Castanjen (the "Affidavit") must be excluded due to (1) an improper legal conclusion, (2) inadmissible hearsay, and (3) the parol evidence rule.[4]  *See* ECF No. 7-1.

While the Federal Rules of Civil Procedure specifically address the use of affidavits to support or oppose a motion for summary judgment, the Rules are silent regarding their use in the context of a Rule 12(b) motion to dismiss.  Nevertheless, courts considering a motion to dismiss consistently look to Rule 56 for guidance.  *See Foshee v. Forethought Fed. Sav. Bank*, 09-2674-JPM-DKV, 2010 WL 2158454, at *3 (W.D. Tenn. May 7, 2010) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 327 (6th. Cir.1990)), *report and recommendation adopted*, 09-2674-JPM-DKV, 2010 WL 2158776 (W.D. Tenn. May 24, 2010).

Rule 56 states: "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56 (c)(4). A sister court has found that this standard applies to affidavits submitted in connection with a Rule 12(b)(2) motion to dismiss.  *See Pixler v. Huff*, 3:11-CV-00207-JHM, 2011 WL 5597327, at *4 (W.D. Ky. Nov. 17, 2011).  This Court, too, sees "no reason why an affidavit or declaration submitted in connection with a motion to dismiss under Rule 12(b)(2) should be treated any

---

[4] CDI submitted the Affidavit along with its Response. Defendants asserted these issues in its Reply. CDI did not seek to file a surreply or otherwise respond to Defendants' Reply.

differently." *Id*. Therefore, the Court will not consider any portions of the Affidavit that are not

based upon personal knowledge or contain inadmissible evidence.

Specifically, Defendants object to the following five paragraphs of the Affidavit:

4. In July 2013, Jeff Berman, an agent of NLR, contacted Ted Gay, the President of Churchill Downs Interactive Gaming, LLC, to discuss the possibility of CDI working with NLR on an online gaming platform.

5. Berman informed CDI that NLR was planning to purchase the Showboat Casino in Atlantic City, New Jersey (the "Showboat"), and was searching for an entity to develop and operate online gaming services on the Showboat's behalf.

6. At that time, CDI had been investigating the prospects for developing an internet gaming and online gambling system, and CDI accepted Mr. Berman's offer to be "introduced" to NLR.

9. Gay and Ben Murr, Senior Vice President and Chief Technology Officer for CDI, discussed technical issues via telephone with Nicholas Ribis, Jr., who was also working on behalf of NLR.

21. Although this was not set forth in the Agreement, CDI and NLR agreed that the online gaming operation, including servers, engineers, and customer service representatives, would be based in Louisville, Kentucky. Functions that were to be performed in Kentucky included product and software development, engineering, product management, operations, user interface and graphic design, and marketing for the online gaming platform.

A.

As to paragraph 4, Defendants argue that Carstanjen's categorization of Berman as an

"agent" improperly draws a legal conclusion. *See Harrah's Entm't, Inc. v. Ace Am. Ins. Co.*, 100

F. App'x 387, 394 (6th Cir. 2004) ("It is well settled that courts should disregard conclusions of

law (or "ultimate fact") found in affidavits submitted for summary judgment." (quoting *F.R.C.

Int'l, Inc. v. United States*, 278 F.3d 641, 643 (6th Cir. 2002)) (internal quotation marks

omitted)). Defendants further argue that the categorization is conclusory. The Court finds that

CDI has not alleged any supporting facts regarding any employment relationship between

Berman and NLR, any agreement between Berman and NLR, or any other subsequent

communications between the two parties that could allow the Court to infer an agency relationship. *Cf. Luvata v. Electrofin, Inc. v. Metal Processing Int'l, L.P.*, 3:11-CV-00398, 2012 WL 3961226, at *6 (W.D. Ky. Sept. 10, 2012) (refusing to credit allegation of agency relationship in a motion to dismiss where the factual allegations in plaintiff's pleadings and affidavits simply showed that it was *possible* that an individual defendant was acting as a defendant company's agent). Because CDI has not alleged facts to support its characterization of Jeff Berman as an agent, this characterization is conclusory, and the Court will disregard it.

B.

Defendants object to the rest of paragraph 4, along with paragraphs 5, 6, and 9, on personal knowledge and hearsay grounds. Although paragraph 2 of the Affidavit states that Carstanjen has "personal knowledge of the matters set forth herein," such a blanket statement cannot save an affidavit provision. *See Ortiz v. Anchor Realty Const., Inc.*, 2:08-CV-800, 2011 WL 2441918, at *6 (S.D. Ohio June 14, 2011) (citing *Spencer v. City of Hollywood, Fla.*, No. 08-60028-CIV, 2009 WL 980274, at *3 n.4 (S.D. Fla. Apr. 10, 2009)). Carstanjen did not allege to have been a party to the conversation between Gay and Berman, nor did he allege other grounds for personal knowledge of it. In paragraph 5 and the latter part of paragraph 6, it is unclear to whom "CDI" refers. The plain language reading of the affidavit suggests that the conversation in paragraph 5 and alleged acceptance in paragraph 6 refers to the same conversation described in paragraph 4. For this reason, the Court will disregard paragraphs 4 and 5, and the latter part of paragraph 6, as not based upon Carstanjen's personal knowledge.

C.

In paragraph 9, Carstanjen again reports a communication between three individuals, Gay, Murr, and Ribis, Jr., to which he was not alleged to be a party. This paragraph therefore

appears to be "based on information made known to [Carstanjen], rather than his personal knowledge." *Mark Hanby Ministries, Inc. v. Lubet*, 106-CV-114, 2007 WL 1004169, at *9 (E.D. Tenn. Mar. 30, 2007). Therefore, the Court will disregard paragraph 9 as not based upon Carstanjen's personal knowledge.

D.

Finally, Defendant objects to paragraph 21 pursuant to the parol evidence rule. The Kentucky Court of Appeals has explained the operation of this rule:

> When two parties have made a contract and have expressed it in writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.

*Reece v. Blevins*, 2001-CA-001826-MR, 2003 WL 1251447, at *5 (Ky. Ct. App. Feb. 7, 2003) (quoting *Johnson v. Dalton*, 318 S.W.2d 415, 417 (Ky. 1958)) (internal quotation marks omitted). Thus, CDI cannot use "oral statements or writings made prior to or contemporaneous with a written agreement that contradict, vary or alter the language appearing in the writing." *C.A.F. & Assocs., LLC v. Portage, Inc.*, 913 F. Supp. 2d 333, 342 (W.D. Ky. 2012) (quoting *Davis v. Siemens Med. Solutions USA, Inc.*, 399 F. Supp. 2d 785, 793 (W.D. Ky. 2005)) (internal quotation marks omitted). Here, CDI does not allege that the additional terms were agreed-to after the Agreement's execution, outside the scope of the parol evidence rule's scope. Therefore, the rule applies.

There are limited exceptions. First, statements of the parties are admissible whenever necessary to interpret ambiguous contract language, so long as the ambiguity is apparent on the face of the instrument itself. *See Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000). Here, there has been no allegation of an ambiguous contract term. Second, extrinsic evidence may add terms to an incomplete agreement where the written agreement is only partially integrated.

*Davis*, 399 F. Supp. 2d at 793 (citing *Kovacs v. Freeman*, 957 S.W.2d 251, 257 (Ky. 1997)). CDI must show the Agreement is only a partial integration and that the additional term is consistent with the Agreement's language. *See id.* at 794 (citing *Ford v. Hurt*, 265 S.W.2d 475, 477 (Ky. 1954)). Here, CDI's sole relevant allegation is that certain additional terms "[were] not set forth in the Agreement," which is insufficient to satisfy its required showing.[5] The Court will therefore disregard paragraph 21 of the Affidavit.

III.

Defendants move to dismiss, arguing that this Court lacks personal jurisdiction over them. The Court may (1) rule on the motion on the basis of the affidavits alone; (2) permit discovery on the motion; or (3) hold an evidentiary hearing on the motion. *See Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998) (citing *Serras v. First Tenn. Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). No party has requested an evidentiary hearing or indicated a need for discovery on the issue of personal jurisdiction. Therefore, the Court will rule on the basis of the pleadings and affidavits alone.

A.

A plaintiff bears the burden of establishing personal jurisdiction. *See Serras*, 875 F.2d at 1214 (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). Here, CDI need only make a *prima facie* showing of jurisdiction. *See CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996) (citation omitted). This is accomplished by "establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir.

---

[5] In addition, the Agreement contains an integration clause, which is generally enforceable in Kentucky. *See Radioshack Corp. v. ComSmart, Inc.*, 222 S.W.3d 256, 260 (Ky. Ct. App. 2007). There is not enough evidence before the Court at this stage to determine the scope and enforceability of the Agreement's alleged integration clause.

2002) (quoting *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)) (internal quotation marks omitted).

Personal jurisdiction may be either "general" or "specific," depending on the nature of the defendant's contacts with the forum state. *See Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002) (citing *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992)). Here, CDI makes clear that it is relying on specific personal jurisdiction. Specific jurisdiction can arise from even a single event or transaction in the forum state, provided the claims at issue arise out of or relate to the defendant's contacts with the forum. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011) (citing *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 318 (1945)); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).

To determine whether it may exercise specific personal jurisdiction, a federal court must apply the law of the forum in which it sits, subject to the requirements of due process. *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 148−49 (6th Cir. 1997). Kentucky's long-arm statute permits Kentucky courts to exercise personal jurisdiction over certain nonresident defendants. *See* Ky. Rev. Stat. Ann. § 454.210 (West). Recently, the Kentucky Supreme Court clarified that this statute is not co-extensive with federal due process. *See Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 56 (Ky. 2011). Rather, a plaintiff's claims must meet one of the nine explicit categories of the long-arm statute, even if federal due process would otherwise permit personal jurisdiction. *See id.*

B.

To assert personal jurisdiction over Defendants under the Kentucky long-arm statute, CDI must show: (1) Defendants' conduct falls under a statutory category identified in KRS §

454.210(2(a), and (2) CDI's claim "arises from" that statutory provision. *See Caesars*, 336 S.W.3d at 58. A claim "arises from" certain conduct when there is a "reasonable and direct nexus" between the conduct causing injury and the defendant's activities in the state. *Id*. at 59.

CDI offers the following jurisdictional facts: NLR's agent facilitated the first contact between NLR and CDI; CDI's in-house attorney in Kentucky led contract negotiations on CDI's behalf; NLR entered into a contract with CDI; CDI was to perform its contract obligations primarily in Kentucky; and CDI hired employees and began developing the online gaming system in Kentucky. CDI alleges that two statutory categories apply to Defendants' conduct here: (1) "[t]ransacting any business in this Commonwealth" and (2) "[c]ausing tortious injury in this Commonwealth by an act or omission outside this Commonwealth." Ky. Rev. Stat. Ann. § 454.210(2)(a)(1), (2)(a)(4) (West).

## C.

Since the Kentucky Supreme Court only recently clarified in *Caesars* that Kentucky's long-arm statute is not coextensive with federal due process limitations on the exercise of personal jurisdiction, there is little precedent interpreting the term "transacting business" in KRS 454.210(2)(a)(1). *See Babcock v. Anthony's LLC*, 3:12-CV-000307-R, 2013 WL 6036689, at *4 (W.D. Ky. Nov. 14, 2013).

CDI argues that Defendants transacted business in Kentucky because "NLR specifically sought out a continuing and substantial business relationship with a Kentucky-based entity." Specifically: NLR reached out to CDI first; CDI's in-house attorney led contract negotiations; CDI and NLR entered into the Agreement that was not a one-time transaction, but rather required at least a seven-year business relationship; CDI and NLR agreed that CDI would perform its

obligations in Kentucky; and CDI invested millions of dollars bolstering its Kentucky-based operations in order to provide its contracted-for services.

Due to the inadmissibility of certain portions of CDI's submitted Affidavit, the whole of the jurisdictional facts, viewed in a light most favorable to CDI, can be summed up as: (1) an entity other than CDI initiated communications between CDI and NLR, (2) CDI's in-house attorney led contract negotiations, (3) CDI and NLR entered into the Agreement, and (4) CDI began performance in Kentucky.

"[T]he key inquiry in personal jurisdiction cases concerns the activities of the *defendant*, not the plaintiff." *Spectrum Scan, Inc. v. AGM CA*, 3:07 CV 72 H, 2007 WL 2258860, at *3 (W.D. Ky. Aug. 2, 2007) (emphasis in original), *adhered to on denial of reconsideration sub nom. Spectrum Scan, LLC v. AGM California*, 519 F. Supp. 2d 655 (W.D. Ky. 2007). The agency issue cuts neither in favor nor against personal jurisdiction, since it has not been plead with sufficient particularity. CDI's General Counsel's actions do not speak to Defendants' actions. In fact, it is undisputed that Defendants have never set foot in Kentucky to negotiate or for any other reason. Further, the actions CDI took to fulfill its own obligations under the Agreement are irrelevant. Therefore, the activity on which CDI purports to predicate personal jurisdiction is solely that Defendants negotiated and entered into the Agreement with CDI.

Even before *Caesars* interpreted Kentucky's long-arm statute more conservatively, a contract with a Kentucky company did not alone support the exercise of jurisdiction over a non-resident Defendant under KRS 454.210(2)(a)(1). *See Spectrum Scan*, 2007 WL 2258860, at *2−3; *see also Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000) ("[T]he mere existence of a contract . . . is insufficient to confer personal jurisdiction over [a non-resident defendant]").

In *Spectrum Scan*, a Kentucky corporation entered into a contract to perform services for a California partnership. *See id.* at *1. In declining to exercise personal jurisdiction, the Court noted that the defendant did not initiate contact with the plaintiff, neither the contract's negotiations nor its execution took place in Kentucky, the subject matter of the contract was outside Kentucky, and the contract did not waive personal jurisdiction. *See id.* at *2. This case is similar to *Spectrum Scan* in many ways. Here, the only face-to-face meeting between the parties occurred in New Jersey, and the Agreement was executed outside Kentucky, in New Jersey and California. The primary subject matter of the Agreement was the Showboat operation in New Jersey, and no waiver of personal jurisdiction was provided.

Another similar case is *Envirometric Process Controls, Inc. v. Adman Electric, Inc.*, 3:12CV-62-S, 2012 WL 4023789 (W.D. Ky. Sept. 12, 2012). There, a Tennessee corporation entered into a subcontract to perform services in Tennessee for a Kentucky corporation. *See id.* at *2. Finding that the defendant's contacts with Kentucky did not amount to "transacting business," the court noted that the defendant had no physical presence in Kentucky, and its performance of its contract obligations did not occur in Kentucky. *See id.* It reaffirmed a Kentucky Court of Appeals decision, which found "it would be unreasonable for Kentucky to exercise jurisdiction over [the defendant] solely on the basis of negotiations by telephone and email that culminated in the acceptance of a single order in Louisville." *Id.* (quoting *Tube Turns Div. of Chemtron Corp. v. Patterson Co.*, 562 S.W.2d 99 (Ky. Ct. App. 1978)).

By contrast, in *Caesars*, the Kentucky Supreme Court exercised personal jurisdiction pursuant to KRS 454.210(2)(a)(1) where the defendant: advertised via mass media, billboards, and direct mailing to Kentucky residents; directed preferred customer incentives to Kentucky

residents; and engaged in substantial civic and charitable activities in the Commonwealth. *See* 336 S.W.3d at 58. Here, it is undisputed that Defendants engaged in none of those activities.

Plaintiff relies heavily on two Kentucky Court of Appeals decisions, *American Trade Alliance* and *Shore Tire*, in support of its argument. *See American Trade Alliance, Inc. v. S. Cross Trading*, 2009-CA-001353-MR, 2011 WL 112439 (Ky. Ct. App. Jan. 14, 2011); *First Nat'l Bank of Louisville v. Shore Tire Co., Inc.*, 651 S.W.2d 472 (Ky. Ct. App. 1983). However, two important distinctions prevent these cases from being persuasive: (1) they were decided before *Caesars*, and (2) they involve goods, not services.

It is worth repeating that "the key inquiry in personal jurisdiction cases concerns the activities of the *defendant*, not the plaintiff." *Spectrum Scan*, 2007 WL 2258860, at *3 (emphasis in original). Although CDI performed work related to the Agreement in Kentucky, it cannot "predicate personal jurisdiction on [its] conduct instead of [Defendants'] contacts with Kentucky." *Thompson v. Koko*, 2012 WL 374054, at *2 (W.D. Ky. Feb. 3, 2012). Because Defendants' actions do not amount to "transacting business" in Kentucky, neither of CDI's claims can proceed under KRS § 454.210(1)(a)(1). The Court need not consider whether CDI's claims "arise from" Defendants' contacts with the Commonwealth.

D.

As a second ground for jurisdiction for its fraud claim, CDI argues that Defendants caused tortious injury in the Commonwealth by an act or omission outside the Commonwealth. Ky. Rev. Stat. Ann. § 454.210(2)(a)(4) (West). This provision allows jurisdiction only if the Defendant (1) "regularly does or solicits business," or (2) "engages in any other persistent course

of conduct," or (3) "derives substantial revenue from goods used or consumed or services rendered in this Commonwealth." CDI argues that all three bases for jurisdiction apply here.

The Court finds none of CDI's arguments sufficiently persuasive. First, CDI has not made a showing that Defendants solicited business in Kentucky. Even if Defendants were to have solicited business in Kentucky with respect to the Agreement, there has been no showing that they *regularly* do so. Second, CDI argues that Defendants' persistent course of conduct includes: (1) Ribis's repeated representations that the Showboat deal was on the verge of closing and (2) the long-term nature of the Agreement. However, communications in response to questions from CDI, and, more generally, periodic communications via email and telephone about a single contract, do not constitute persistent conduct, nor does the entry into a single, potentially long-term contract. Third and finally, CDI argues that Defendants would have "derived substantial revenue" from CDI's services rendered in Kentucky had there been no breach. Putting aside the fact that CDI has made no allegations that Defendants did, in fact, derive any revenue, the Court finds CDI's focus on its own services rendered inapposite. As the Court explained in *Spectrum Scan*:

> Such an interpretation would shift the focus of the analysis to *Plaintiff's* activities and not Defendant's contacts with the state. The more natural reading of [the language in KRS § 454.210(2)(a)(4)] and one that is consistent with traditional minimum contacts analysis leads a court to examine whether Defendant actually renders goods or services in Kentucky sufficient to support jurisdiction.

519 F. Supp. 2d at 658−59 (emphasis in original). Here, Defendants did not render any goods or services in Kentucky.

CDI has failed to show that Defendants' conduct constituted (1) regularly doing or soliciting business, (2) engaging in a persistent course of conduct, or (3) deriving the requisite revenue. *Cf. Papa John's Int'l, Inc. v. Entm't Mktg. & Commc'ns Int'l, Ltd.*, 381 F. Supp. 2d

638, 643 (W.D. Ky. 2005) (holding that the court had no jurisdiction where there was virtually no evidence that defendants solicited business in Kentucky, performed work in Kentucky, derived substantial revenues from business in Kentucky, reached an agreement in Kentucky, or passed title to goods in Kentucky), *cited with approval in Bondurant v. St. Thomas Hosp*., 366 S.W.3d 481, 485 (Ky. Ct. App. 2011).

Because the Court finds that Defendants' conduct does not fall into any of the three categories above, the Court need not consider whether any injury suffered by CDI arose out of Defendants' contact with Kentucky, nor must it consider whether tortious injury was caused in the Commonwealth.[6]

IV.

Having found that this Court does not possess personal jurisdiction over the Defendants with respect to either CDI's breach of contract or fraud claim, the Court will transfer this action, in the interest of justice and to cure want of jurisdiction, to a competent district court, the United States District Court for the District of New Jersey. *See* 28 U.S.C. § 1631. Because New Jersey is the district in which Defendants reside, both venue and the exercise of personal jurisdiction over Defendants are proper. The action shall proceed as if it had been noticed for the U.S. District Court for the District of New Jersey on its original notice date. *Id.*

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motion to dismiss is DENIED.

---

[6] Defendants' alleged conduct and contacts with Kentucky do not satisfy the criteria for KRS § 454.210(2)(a)(1) or (4). Therefore, the Court need not proceed to analyze whether asserting jurisdiction would comport with federal due process limitations. *See Thompson*, 2012 WL 374064, at *3.

IT IS FURTHER ORDERED that Defendants' motion to transfer venue is SUSTAINED, and this case is TRANSFERRED to the United States District Court for the District of New Jersey.

Date:

cc:     Counsel of Record